

FILED by ____ D.C.

JUL 27 2000

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CASE NO. <u>00-6190-Cr-DIMITROLEUS</u> |
| | ) | Magistrate Judge |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RUDOLPH McKENZIE, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | **GOVERNMENT'S RESPONSE TO** |
| ————————————————— | ) | **THE STANDING DISCOVERY ORDER** |

The United States hereby files this response to the Standing

Discovery Order. This response also complies with Local Rule 88.10

and Federal Rule of Criminal Procedure 16, and is numbered to

correspond with Local Rule 88.10.

A.   1.   Attached, please find a copy of any written
statements made by the defendant.

2.   The following is the substance of an oral statement
made by the defendant before or after arrest in
response to interrogation by any person then known
to the defendant to be a government agent which the
government intends to use at trial: <u>See attached
report.</u>

3.   No defendant testified before the Grand Jury.



3.    No defendant testified before the Grand Jury.

4.    The NCIC record of the defendant, if any exists, will be made available upon receipt by this office.

5.    Books, papers, documents, photographs, tangible objects, buildings or places which the government intends to use as evidence at trial to prove its case in chief, or were obtained or belonging to the defendant may be inspected at a mutually convenient time at the Office of the United States Attorney. See attached list.

The attachments to this discovery response are not necessarily copies of all the books, papers, documents, etc., that the government may intend to introduce at trial.

6.    A laboratory analysis of the substance seized in connection with this case will be made available to you upon receipt by this office.

B.    DEMAND FOR RECIPROCAL DISCOVERY: The United States requests the disclosure and production of materials enumerated as items 1, 2 and 3 of Section B of the Standing Discovery Order. This request is also made pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure.

C.    The government will disclose any information or material which may be favorable on the issues of guilt or punishment within the scope of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and <u>United States v. Agurs</u>, 427 U.S. 97 (1976).

D.    The government will disclose any payments, promises of immunity, leniency, preferential treatment, or other inducements made to prospective government witnesses, within the scope of <u>Giglio v. United States</u>, 405 U.S. 150 (1972), or <u>Napue v. Illinois</u>, 360 U.S. 264 (1959).

E.    The government will disclose any prior convictions of any alleged co-conspirator, accomplice or informant who will testify for the government at trial.

2

F.      No defendant was identified in a lineup, show up, photo spread or similar identification proceedings.

G.      The government has advised its agents and officers involved in this case to preserve all rough notes.

H.      The government will timely advise the defendant of its intent, if any, to introduce during its case in chief proof of evidence pursuant to F.R.E. 404(b). You are hereby on notice that all evidence made available to you for inspection, as well as all statements disclosed herein or in any future discovery letter, may be offered in the trial of this cause, under F.R.E. 404(b) or otherwise (including the inextricably-intertwined doctrine).

I.      The defendant is not an aggrieved person, as defined in Title 18, United States Code, Section 2510(11), of any electronic surveillance.

J.      The government has ordered transcribed the Grand Jury testimony of all witnesses who will testify for the government at the trial of this cause.

K.      The government will, upon defense request, deliver to any laboratory presently registered with the Attorney General in compliance with 21 U.S.C. § 822 and § 823 and 21 C.F.R. 1301.13, a sufficient representative sample of any alleged contraband which is the subject of this indictment to allow independent chemical analysis of such sample.

        If there is no response within ten (10) days from the date of the Certificate of Service attached hereto, the bulk of the contraband/narcotics will be destroyed. As usual, random samples will be set aside to be used as evidence at trial.

L.      The government does not know of any automobile, vessel, or aircraft allegedly used in the commission of this offense that is in the government's possession.

M.      The government is not aware of any latent fingerprints or palm prints which have been identified by a government expert as those of the defendant.

3

Standing Discovery Order, Rule 16(c) of the Federal Rules of Criminal Procedure, <u>Brady</u>, <u>Giglio</u>, <u>Napue</u>, and the obligation to assure a fair trial.

In addition to the request made above by the government pursuant to both Section B of the Standing Discovery Order and Rule 16(b) of the Federal Rules of Criminal Procedure, in accordance with Rule 12.1 of the Federal Rules of Criminal Procedure, the government hereby demands Notice of Alibi defense; the approximate time, date, and place of the offense was:

              Time:
              Date:      June 28, 2000
              Place:     Ft. Lauderdale Int'l Airport

The attachments to this response are numbered pages 1 - 22. Please contact the undersigned Assistant United States Attorney if any pages are missing.

                              Respectfully submitted,

                              GUY A. LEWIS
                              UNITED STATES ATTORNEY

By:

                              JEFFREY H. KAY
                              Assistant United States Attorney
                              Florida Bar No.   208035
                              500 E. Broward Blvd. 7th Flr
                              Ft. Lauderdale, Fl 33394
                              Tel: (954) 356-7255
                              Fax: (954) 356-7336

cc:   DEA Agent Jeffrey Outlaw

4

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was delivered by United States mail this 27th day of July, 2000 to: Assistant Federal Public Defender, 101 N.E. 3rd Avenue, Ft. Lauderdale, Fl 33394.

JEFFREY H. KAY
Assistant United States Attorney

5

<u>ATTACHMENT</u>

1.    Photograph of subject
2.    Affidavit of defendant
3.    Advise of Right form
4.    U.S. Custom Declaration
5.    Consent Form X-Ray
6.    Miranda Warnings Sheet
7.    Broward Medical Center form
8.    Discharge Instructions
9.    Medical Record
10.   Admitting form
11.   Risk Assessment of Individual
12.   Record history
13.   Oral statements to Custom Agent

United States of America _____ ) ss
_Southern_ , District of _Florida_ )

S93 142998
7/7/00

1  I, _Rudolph McKenzie_ _____, state that:

2  I reside at _758 Anaheim Ln. Palu City FL. was_

3  _approached by an individual named S.P._

4  _at a get together he told Me he trafficced_

5  _internally he told Me that a man by the_

6  _name of Hat is Jamaica would pay for_

7  _My ticket + also pay Me to carry some_

8  _pellets at first I said no, but I was_

9  _in debt to some people whom I needed to_

10 _pay + I was buried in bills with no Money_

11 _+ a broke down car with a wife + 2 children_

12 _to support so I decided I trip would_

13 _help clear Me instead of borrowing more_

14 _Money that was a very wrong decisions_

15 _after laying in the hospital for 10 days_

16 _+ having spoken with the officers I realized_

17 _that I need to have a positive influence_

18 _around Me, I wish all knew people like them_

19 _before this, they really educated Me on_

20 _the dangers + how to be Phr Myself._

21 _I'm sorry + will never do this again +_

22 _with Gods help if I can educate + help_

23 _others which would be More gratifying._

24 _Thanh you for your time. God Bless_

25

26                          _Rudolph I. McKenzie M._

27  ‹                       593142998  7/7/00

Form **2311** (Rev. 9-76)              Department of the Treasury

(2)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

I have read the foregoing statement consisting of _____ pages, each of which I have signed. I fully under-stand this statement and it is true, accurate and complete to the best of my knowledge and belief. I made the corrections shown and placed my initials opposite each.

I made this statement freely and voluntarily without any threats or rewards, or promises of reward having been made to me in return for it.

Subscribed and sworn to before me this __7ᵗʰ__
day of _____, 19~~~~2000,
at _13?0 H25 (1:30 P4_

_B. C. Blood STA/USCS_
_(Signature)_

_(Title)_

_(Signature of affiant)_
398142998
7/7/00

_(Signature of witness, if any)_

## STATEMENT OF RIGHTS

Before we ask you any questions, it is my duty to advise you of your rights.

You have the right to remain silent.

Anything you say can be used against you in court, or other proceedings.

You have the right to consult an attorney before making any statement or answering any question, and you may have him present with you during questioning.

You may have an attorney appointed by the U.S. Commissioner or the court to represent you if you cannot afford or otherwise obtain one.

If you decide to answer questions now with or without an attorney, you still have the right to stop the questioning at any time, or to stop the questioning for the purpose of consulting an attorney.

HOWEVER--------

You may waive the right to advice of counsel and your right to remain silent and answer questions or make a statement without consulting an attorney if you so desire.
----------------------------------------------------------------

## WAIVER

I have had the above statement of my rights read and explained to me and fully understand these rights. I waive them freely and voluntarily, without threat or intimidation and without any promise of reward or immunity, I was taken into custody at _11:00 AM_ (time), on _7/7/00_ (date), and have signed this document at _11:45 AM_ (time), on _7/7/00_ (date).

(Signature)

WITNESSES:

(Name)

(Name)

(3)

Dr LiC M 25272 974 041 0

**NOTICE**

ALL PERSONS ARE SUBJECT TO FURTHER QUESTIONING AND THEIR PERSONS, BE-LONGINGS, AND CONVEYANCE ARE SUBJECT TO SEARCH. (19 CFR 162.1 - 162.8)

The unlawful importation of controlled substances (narcotics, chemicals, prescription medicines if not accompanied by a prescription, etc.) regardless of amount is a violation of U.S. law.

**AGRICULTURAL AND WILDLIFE PRODUCTS**

To prevent the entry of dangerous agricultural pests and prohibited wildlife, the following are restricted. Fruits, vegetables, plants, plant products, soil, meats, meat products, birds, snails, and other live animals or animal products, wildlife and wildlife products. Failure to declare all such items to a Customs/Agricultural/Wildlife officer can result in penalties and the items may be subject to seizure.

**CURRENCY AND MONETARY INSTRUMENTS**

The transportation of currency or monetary instruments, REGARDLESS OF AMOUNT, IS LEGAL; however, if you take out of or bring into the United States more than $10,000 (U.S. or foreign equivalent, or a combination of the two) in coin, currency, traveler's checks or bearer instruments such as money orders, personal or cashier's checks, stocks or bonds, you are required BY LAW to FILE a report on Form 4790 with the U.S. Customs Service. If you have someone else carry the currency or instruments for you, you must also file the report. FAILURE TO FILE THE REQUIRED REPORT OR FAILURE TO REPORT THE TOTAL AMOUNT YOU ARE CARRYING MAY LEAD TO THE SEIZURE OF ALL THE CURRENCY OR INSTRUMENTS, AND MAY SUBJECT YOU TO CIVIL PENALTIES AND/OR CRIMINAL PROSECUTION.

MERCHANDISE   SS# 593 - 14 - 2998

VISITORS (NON-RESIDENTS) must declare in item 14 the total value of all articles intended for others and all items intended to be sold or left in the U.S. This includes all gifts and commercial items or samples. (EXCEPTION: Your own personal effects, such as clothing, personal jewelry and camera equipment, luggage, etc., need not be declared.)

U.S. RESIDENTS must declare in item 14 the total value of ALL articles, including commercial goods and samples, they acquired abroad (whether new or used; dutiable or not, and whether obtained by purchase, received as a gift, or otherwise), including those articles purchased in DUTY FREE STORES IN THE U.S. OR ABROAD, which are in their possession at the time of arrival. Articles which you acquired on this trip mailed from abroad, (other than articles acquired in insular possessions and various Caribbean Basin countries) are dutiable upon their arrival in the U.S.

THE AMOUNT OF DUTY TO BE PAID will be determined by a Customs officer. U.S. residents are normally entitled to a duty free exemption of $400 on those items accompanying them; non-residents are normally entitled to an exemption of $100. Duty is normally a flat rate of 10% on the first $1000 above the exemption. If the value of goods declared in item 14 EXCEEDS $1400 PER PERSON, then list ALL articles below and show price paid in U.S. dollars or, for gifts, fair retail value. Please describe all articles by their common name. For example: MAN'S WOOL KNIT SWEATER, DIAMOND AND GOLD RING, etc. Also, please have all your receipts ready to present to the Customs officer, if requested. This will help to facilitate the inspection process.

COMMERCIAL MERCHANDISE can be defined as articles for sale, for soliciting orders, or other goods not considered personal effects of the traveler.

POB - Queens NY

**IF YOU HAVE ANY QUESTIONS ABOUT WHAT MUST BE REPORTED OR DECLARED, ASK A CUSTOMS OFFICER**

| DESCRIPTION OF ARTICLES (List may be continued on another Form 6059B) | VALUE | CUSTOMS USE |
|---|---|---|
| FRI | | |
| Farkley Reunion | | workld/ Father Body shop |
| 561-597 5826# | | $205 |
| 561-879 1984 | | |
| **TOTAL ▷** | | |

Paperwork Reduction Act Notice. The information collected on this form is needed to carry out the Customs, Agriculture, and Currency laws of the United States. We need it to insure that travelers are complying with these laws and to allow us to figure and collect the right amount of duty and taxes. Your response is mandatory. The estimated average burden associated with this collection of information is 3 minutes per respondent or recordkeeper depending on individual circumstances. Comments concerning the accuracy of this burden estimate and suggestions for reducing this burden should be directed to U.S. Customs Service, Information Services Group, Washington, D.C. 20229. DO NOT send completed form(s) to this office.

*U.S.G.P.O.: 2000 —683-781    Customs Form 6059B (012799)(Back)

---

APHIS/FWS USE ONLY    SSNO 593 14 2998    CUSTOMS USE ONLY

**WELCOME TO THE UNITED STATES**

DEPARTMENT OF THE TREASURY
UNITED STATES CUSTOMS SERVICE

FORM APPROVED
OMB NO. 1515-0041

**CUSTOMS DECLARATION**

19 CFR 122.27, 148.12, 148.13, 148.110, 148.111

Each arriving traveler or responsible family member must provide the following information (only ONE written declaration per family is required).

1. Family Name   Hehanzie

2. First (Given) Name   Rudolph

3. Middle Initial(s)   I.

4. Birth Date (day/mo/yr)   2 1 1 74

5. Airline/Flight No. or Vessel Name or Vehicle License No.   JW008 9

6. Number of Family Members Traveling With You

7. (a) Country of Citizenship   U.S.

7. (b) Country of Residence   U.S.

8. (a) U.S. Address (Street Number/Hotel/Mailing Address in U.S.)   7585 Anaheim Ln.   Anaheim Ln

8. (b) U.S. Address (City)   Polu City Palm   8. (c) U.S. Address (State)   FL   34990

9. Countries visited on this trip prior to U.S. arrival

a.) Jamaica   b.)

c.) Camp W Williams,

10. The purpose of my (our) trip is (Check one or both boxes, if applicable)   Business ☐   Personal ☑

11. I am (We are) bringing fruits, plants, meats, food, soil, birds, snails, other live animals/wildlife products, farm products; or, have been on a farm or ranch outside the U.S.   Yes ☐   No ☑

12. I am (We are) carrying currency or monetary instruments over $10,000 U.S., or foreign equivalent.   Yes ☐   No ☑

13. I have (We have) commercial merchandise, U.S. or foreign. (Check one box only)   Yes ☐   No ☑

14. The total value of all goods, including commercial merchandise, I/we purchased or acquired abroad and am/are bringing to the U.S. is:   $

(See the instructions on the back of this form under "MERCHANDISE" and use the space provided there to list all the items you must declare. If you have nothing to declare, write "-0-" in the space provided above.)

**SIGN BELOW AFTER YOU READ NOTICE ON REVERSE**

I have read the notice on the reverse and have made a truthful declaration.

X _____
Signature

U.S. IMMIGRATION
U.S. Customs use only — Do not write below this line — U.S. Customs use only

| INSPECTOR'S BADGE NUMBER | STAMP AREA |
|---|---|
| J.P. 37252 | JUN 2 7 2000 |
| TIME COMPLETED   23:40 | ADMITTED UNTIL |

Customs Form 6059B (012799)

(4)

*ATTACHMENT "A"*

## Standard Consent Form for an X-Ray

I, the undersigned, hereby consent to an x-ray examination of the trunk of my body by a medical facility designated by the United States Customs Service. I consent to the result of said examination and related medical records being given to officials of the United States Customs Service. I hereby release the facility and its personnel performing said examinations and any officials of the United States Customs Service directing that said examinations be carried out, from any liability arising out of the performance of said examinations. I understand that I have the right to refuse such consent and acknowledge that my consent is freely given and is not the result of any threats, coercion or other intimidation.

Signed

Print Name Rudolph M<sup>c</sup>Kenzie

Date    6/27/00

Time

Witness Signature:

Badge:

Witness Signature:

Badge:    41018

20

*ATTACHMENT "C"*

# MIRANDA WARNINGS

• Before we ask you any questions, it is my duty to advise you of your rights.

You have the right to remain silent.

• Anything you say can be used against you in court, or other proceedings.

You have the right to consult an attorney before making any statements or answering any questions, and you may have him present with you during questioning.

You may have an attorney appointed by the U. S. Magistrate or the court to represent you if you cannot afford or otherwise obtain one.

• If you decide to answer questions now, with or without a lawyer, you still have the right to stop the questioning for the purpose of consulting a lawyer.

**However**

• You may waive the right to advice of counsel and your right to remain silent and answer questions or make a statement without consulting a lawyer if you so desire.

• Do you understand your rights?    Yes ✓    No_____

• Do you waive your rights?    Yes ⟋    No_____

Signed:_____

Date: 6/27/00    Time: 22:40

Witness: Carol Gladder

Badge: H1600

Witness: ___ 37252 ___

Badge: 37252

22

Mid attending
has attzadn ↓ (Fov) Clear By
Exit x-ray- KUB -NI9.
Feels fine
V/S Stable
OK Fav DK

**ORDER OF RECORDING**
1. Date and time of examination
2. State of positive findings noted previously
3. New signs and symptoms
4. Complications
5. Changes of impressions or diagnosis
6. Record of treatment given
7. Results of treatment
8. Signature of physician making observations

**Broward General Medical Center**
NORTH BROWARD HOSPITAL DISTRICT
**PROGRESS NOTES**

900577

DATE: 07/06/00 TIME: 9 35 AM

TO: ☐ HOME ☒ OTHER _____
MODE OF DISCHARGE: ☐ WHEELCHAIR ☒ AMBULATORY
☐ OTHER   ACCOMPANIED BY _Guard/Security_

PERSONAL BELONGINGS RECEIVED
AT TIME OF DISCHARGE:
Valuables Slip _____ N/A
Equipment _____ N/A

## DISCHARGE ASSESSMENT

* Name of Physician Notified/Comment upon notification

| | | |
|---|---|---|
| A. AFEBRILE FOR LAST 48 HRS | ☒ YES * | ☐ NO _____ |
| B. BLOOD PRESSURE PULSE STABLE | ☒ YES * | ☐ NO _____ |
| C. WOUND HEALING | ☒ N/A ☐ YES * | ☐ NO _____ |
| D. PAIN CONTROLLED | ☒ N/A ☐ YES * | ☐ NO _____ |
| E. ALERT/ORIENTED | ☒ YES * | ☐ NO _____ |

## SUMMARY OF DISCHARGE INSTRUCTION

DISCHARGE MEDICATION:        NEW PRESCRIPTION RECEIVED:   ☐ YES *   ☐ NO
RESUME PRE-HOSPITAL MEDICATION PER PHYSICIAN INSTRUCTIONS   ☐ YES *   ☐ NO

| NAME OF MEDICATION | DOSE FREQUENCY | LAST DOSE | PURPOSE/SPECIAL INSTRUCTION |
|---|---|---|---|
| NONE | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

DIET: ☒ REGULAR   ☐ SPECIAL      ACTIVITIES:   ☐ NO RESTRICTION   ☐ RESTRICTIONS (see special instruction)
SPECIAL EQUIPMENT: _NONE_
SPECIAL INSTRUCTIONS: (List what was taught/to whom) _____
_____

WRITTEN INSTRUCTION: (i.e. Pamphlet Given) _____
  "Possible Food/Drug Interactions" Pamphlet received ☐

**FOLLOW-UP APPOINTMENTS**       (PHYSICIAN/CLINIC/OTHER)       DATE/TIME       PHONE
  _NONE_
_____

HOME CARE: _____
OTHER: _____
HAVE RECEIVED AND FULLY UNDERSTAND THE IMPORTANCE OF CONTINUING CARE AS DESCRIBED

X _____
PATIENT'S Q. SIGNATURE

X _____
SIGNATURE (Person Providing Discharge Instruction)

**North Broward Hospital District**
**DISCHARGE INSTRUCTIONS**   (8)

Original copy - chart   Yellow copy - patient   Pink copy - pharmacist

5005 01

1

1047106063 N   06/28/00
1 - MUSTARD , ROLAND
( ) 01/01/1984 AGE   16  SEX M
1 CHOKSHI RAJIV R             SSP
MR 0929191   DES

THIS INFORMATION IS PRIVILEGED & CONFIDENTIAL
IF YOU HAVE RECEIVED IN ERROR PLEASE CALL (954)847-6357.
USE OF MATERIAL BY OTHER THAN INTENDED IS
PROHIBITED.

BROWARD GENERAL MED CTR
1600 SOUTH ANDREWS AVENUE
FORT LAUDERDALE
FL 33316

DEPARTMENT OF RADIOLOGY AND MEDICAL IMAGING OF THE NORTH BROWARD HOSPITAL DISTRICT
DIAGNOSTIC RADIOLOGY

| EXAM | REASON FOR EXAM | ACCESSION#: | EXAM DATE |
|------|----------------|-------------|-----------|
| ABDOMEN SINGLE VIEW | RU TODAY | 00-188-2288 | 06JUL00 |

ABDOMEN, SINGLE VIEW:    07/06/00

HISTORY: FOLLOW-UP STUDY, QUESTION CONTROL AND DRUG CARRIER.

A single frontal view of the abdomen and pelvis was obtained and compared with
the prior study obtained yesterday.

The bowel gas pattern is normal with bowel gas throughout the large bowel to
the rectum.

I see no opaque foreign bodies. There is no free air, ascites or
organomegaly.  The regional bony structures are intact.

IMPRESSION:

THE KUB IS FREE OF OPAQUE FOREIGN BODIES.  NONSPECIFIC BOWEL GAS PATTERN.

PPS:vrz
Tra:06JUL2000

Paul P. Slawek, M.D.
(Electronic Signature)

---

ADMIT DATE:28JUN00  D/C DATE:            DOB: 01JAN84   MRE:      (000)10929191
SEX:  M   PATIENT TYPE:  S                              FIN#:     000104040063
ADMIT DR:      RAJIV R CHOKSHI M.D.                     PATIENT:  MUSTARD, ROLAND
CHART RECIPIENT: RAJIV R CHOKSHI M.D.        0004766
PRINTED:  06JUL00  1656             RADIOLOGY CHART   NURSING ST: 85ST
                                   DO NOT DISCARD        PAGE:   1   END OF REPORT

Philmore Hughes, RN,

(5)

*ATTACHMENT "D"*

## FROM: U.S. CUSTOMS SERVICE - PORT EVERGLADES

### TO: BROWARD GENERAL MEDICAL CENTER

### ATTN: E D CHARGE NURSE & ADMITTING BED CONTROL
### FAX # 355-5113    Phone # 355-5760

PORT EVERGLADES CUSTOMS OFFICERS REQUEST MEDICAL SERVICE FOR
# 1 or 2 SUSPECTED INTERNAL DRUG COURIER/S. OFFICERS ARE ENROUTE
TO BGMC WITH AN ESTIMATED TIME OF ARRIVAL OF 2400 hrs .

**BGMC PATIENT ADMITTING INFORMATION/ RESERVATION**

ADM. DATE:_____ TIME:_____

U. S. CUSTOMS ID NUMBER: 000520305

PATIENT NAME: Mr. /Ms. /Mrs. John Doe SEX: M AGE: 26

DIAGNOSES: Suspected of ingesting drugs or concealing drugs within body cavities

PROCEDURE(S): 4-RAY

PHYSICIAN NAME:_____ DRG:_____

FEE-FOR-SERVICE: Y___ N___ AUTH. No:_____ URC _____

ROOM:_____ BED:_____

PHONE# 356-7431 (CUSTOMS ONLY) DOB: 2/01

**CUSTOMS BILLING INFORMATION: SEND TO**
U.S CUSTOMS SERVICE
909 SE 1ST STREET
MIAMI, FL 33131
ATTN: MYRA PERSCKY
**Phone # (305) 810-5117**

PORT EVERGLADES CUSTOMS  PHONE # 954-356-7431  FAX# 954-356-7053



## RISK ASSESSMENT OF NEWLY COMMITTED INDIVIDUAL

Please explain any affirmative responses as appropriate. Use the reverse of this form for any extensive or additional comments.

1.    Is the inmate involved or was he/she involved in any high profile criminal activity or high profile case?  _N/O_
If so, explain.

2.    Is the inmate a known "drug lord"?  _N/O_
If so, explain.

3.    Is there any gang affiliation or group identification known about this inmate?  _N/O_
If so, which gang and to what extent is the influence.

4.    Is there any current or past history of violence associated with this inmate?  _N/O_
If so, explain and describe if weapons were involved.

5.    Is this inmate a potential escape risk either because of the nature and severity of his/her offense or for any other reason?  _N/O_
If so, please give details.

6.    Is there any known suicidal risk or is this inmate using any mind altering drugs at this time?
_N/O_
If so, explain the possible suicidal tendencies and/or the drug being used.

7.    Is there anyone you know who may be incarcerated at this facility from whom this inmate needs to be separated?  _N/c_
If so, give complete name.

8.    Are there any extraordinary security precautions you recommend in relation to this inmate?
_N/O_
If so, please describe.

AGENCY   U.S. CUSTOMS SERVICE                   DATE   _7/6/OO_

PRINTED NAME OF AGENT   _JEFFREY S. OUTLAW_

SIGNATURE OF AGENT _____

(II)

U.S. Department of Justice
United States Marshals Service

**Personal History of Defendant**

Name _MC KENZIE_    _RUDOLPH_    _ISAAC_    _JR:_
          (Last)              (First)                        (Middle)

Aliases _Rudy_                                    Criminal ID # _____

Race _BLACK_    Sex _MALE_    Date & Place of Birth _2/1/74_    _QUEENS, NY_

Citizenship _US_    How Acquired _BIRTH_

Height _5'8"_ Weight _180_ Eyes _Brn_ Hair _Blc_ Build _Med_ National Origin _USA_

Complexion _Jank_    Scars _N/A_    Deformities _N/A_

Marks, Moles, Tattoos _N/A_

Drug Addict (yes) (no) _No_  Type Drug _N/A_    Peculiarities _N/A_

Address _758 Anaheim Cor, Palm C. ↓, FL 34990_

Telephone Number _561-597-5826_    Date and Time of Arrest _7/7/00_, _11:30 AM_

Place of Arrest Violation _Ft. Lauderdale Intl A/P, Florida_

Former Address _N/A_

Locales Frequented _N/A_

Associates _N/A_
                (Name)                              (Alias)                              (Address)



**FAMILY AND RELATIVES**
              Name                                        Address

Father _Rudolph Makenzie_    _SAS_

Mother _Christie Mckenzie_    _SAS_

Spouse _Shennetk Mckenze_    _SAS_

Father-in-Law _§ Sylvan J Lewis_    _Jamaica_

Mother-in-Law _Spngis Dara (Lewis_    _Jamaica_

②

## BROTHERS, SISTERS, BROTHERS-IN-LAW, SISTERS-IN-LAW, CHILDREN

| Name | | | | Address | | | |
|------|------|------|------|---------|------|------|------|
| Rudolph | Mckenzie | III | (Sr.) | fort | St. | Lucie, | FL |
| Lolan' | Mckenzie | (daughter) | | STs | | | |
| Koreen | Mckenzie | (Daughter) | | | | | |
| Alex | Mckenzie | (brother) | | | | | |
| Tisha | Mckenzie | (sister) | | | | | |

---

## EMPLOYMENT RECORD

Occupation  Auto  Body                     Social Security No.  593-14-299?

Employer  Shining Star                     Dates of Employment  10 years  +

Address  1661  Biltmore  St                Port St. Lucie, FL

Duties  Auto Body Worker

Military Service  N/A

(Organization)                (Rating)                (Lenght of Service)

Date of Entry _____  Date of Discharge _____

Type of Discharge _____

Veterans Compensation _____

Selective Service Classification _____

Real Estate or Property Owned  N/A            Board  N/A

Bank Accounts  First National Bank

Money Owed, Banks, Finance or Loan Companies  $800 -

Insurance Policies, Fraternal Organizations, etc., that Would Assist in Locating Defendant in the Future _____

Direct  Car  Insurance

Chauffeur's License No. _____  Auto Operator's License No. _____  State  FL

Automobile, Describe  Nissan  Pulsar (98)  M-252-224-041 - 0

License No.  RDG-GSN    State    FL      Year Registration _____

Remarks: _____

Olus  Car

Admitted Criminal Record

Aggravated  assault  w/ firearm

Date  7/7/00                        Prepared by: _____

SPECIAL AGENT. U.S. CUSTOMS
(Title)

DOJ

OFFICIAL USE ONLY

UNITED STATES CUSTOMS SERVICE

REPORT OF INVESTIGATION
CONTINUATION

2. CASE NUMBER FL13CE00FL0091

3. REPORT NUMBER: 002

smuggling operation.  MCKENZIE was to stay with Matt at his home or in a hotel Matt provided.

On June 23, 2000, MCKENZIE was driven to the FFL by his cousin, Luke Haynes.  When he arrived at the airport, he discovered WILLIAMS standing on the curbside in front of the Air Jamaica terminal.  MCKENZIE, assuming that it was a coincidence, thought WILLIAMS was traveling to Jamaica to visit his relatives.

MCKENZIE then proceeded to the Air Jamaica ticket counter where a ticket was waiting in his name.  He and WILLIAMS flew together to Kingston, Jamaica.  Upon arriving, they were met by a Jamaican female who worked for Matt.  The female drove them both to MATT's home.  To this point, neither MCKENZIE nor WILLIAMS had told each other that they knew Matt.  They arrived at the residence but Matt was not at home.  They then went to a home owned by WILLIAM's father where both resided for most of the trip.

On June 26, 2000, MCKENZIE and WILLIAMS met with Matt at his home.  Matt gave MCKENZIE $100 in spending money.  He and Matt then discussed the price MCKENZIE would be paid to smuggle specific quantities of cocaine.  Matt told MCKENZIE that if he swallowed fifty pellets that he would pay him $2,000.

Located on a table in Matt's home were bowls filled with pellets.  MCKENZIE took one bowl, poured the pellets on the table and swallowed each one.  He then obtained a second bowl and swallowed all but four of the pellets.  MCKENZIE did not keep count of the number of pellets he had swallowed.  Matt told him that each bowl had fifty pellets and based on the amount MCKENZIE had swallowed, he (MCKENZIE) would be paid $3,300.

MCKENZIE had observed WILLIAMS attempting to swallow the pellets but he seemed unable.  MCKENZIE was surprised when he learned that WILLIAMS had been an internal carrier.  WILLIAMS had never mentioned that he was working with J.P. or that he even knew him.

MATT took them both to the airport in Kingston.  Matt told MCKENZIE that when he arrived back home, he should drink a lot of prune juice and the pellets would come right out.

MCKENZIE had planned, once he returned to the U.S., ON staying with a friend in Port St. Lucie, FL, in order to pass the pellets.  He then would deliver them to J.P. and receive payment.  MCKENZIE's wife was going to pick him up at the FFL on his return from Jamaica.

following advisement of rights. MCKENZIE stated during the interview, both

er-06190-WPD Document 14 Entered on FLSD Docket 07/28/2000 Pa

MCKENZIE was propositioned to smuggle cocaine from Jamaica by an individual he knew only as J.P. J.P. was an acquaintance who frequented MCKENZIE's neighborhood, around Avenue D. (Slay Conner), in the Ft. Pierce, FL area. MCKENZIE was told by J.P. that he (J.P.) had been involved in smuggling cocaine into the U.S. from Jamaica and had been paid a large sum of money. He further explained that he could arrange for MCKENZIE to also get involved in smuggling cocaine for money. J.P. said that if MCKENZIE smuggled sixty-five pellets, filled with cocaine, he (MCKENZIE) would receive $2,000.

MCKENZIE described J.P. as a black male in his mid to late 20s, about 6'0" in height with a slim build. J.P. normally wears a ball cap, a diamond earring, and has a goatee beard. J.P. drives a Chevrolet Caprice painted with a special multicolored paint called "chameleon."

Once MCKENZIE agreed to smuggle cocaine, J.P. made travel arrangements to Jamaica. J.P. explained that MCKENZIE would be met in Jamaica by a black Jamaican male named "Matt." J.P. described Matt as the leader of the

O F F I C I A L   U S E   O N L Y

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE US CUSTOMS SERVICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO HEADQUARTERS, US CUSTOMS SERVICE TOGETHER WITH A COPY OF THE DOCUMENT.

13

owing advisement of rights. MCKENZIE stated during the interview, both
ally and in writing, essentially the following:

MCKENZIE was propositioned to smuggle cocaine from Jamaica by an
individual he knew only as J.P. J.P. was an acquaintance who frequented
MCKENZIE's neighborhood, around Avenue D. (Slay Conner), in the Ft.
Pierce, FL area. MCKENZIE was told by J.P. that he (J.P.) had been
involved in smuggling cocaine into the U.S. from Jamaica and had been
paid a large sum of money. He further explained that he could arrange
for MCKENZIE to also get involved in smuggling cocaine for money. J.P.
said that if MCKENZIE smuggled sixty-five pellets, filled with cocaine,
he (MCKENZIE) would receive $2,000.

MCKENZIE described J.P. as a black male in his mid to late 20s, about
6'0" in height with a slim build. J.P. normally wears a ball cap, a
diamond earring, and has a goatee beard. J.P. drives a Chevrolet Caprice
painted with a special multicolored paint called "chameleon."

Once MCKENZIE agreed to smuggle cocaine, J.P. made travel arrangements to
Jamaica. J.P. explained that MCKENZIE would be met in Jamaica by a black
Jamaican male named "Matt." J.P. described Matt as the leader of the

O F F I C I A L   U S E   O N L Y

IS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF
US CUSTOMS SERVICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR
ORMATION CONTAINED HEREIN SHOULD BE REFERRED TO HEADQUARTERS, US CUSTOMS
VICE TOGETHER WITH A COPY OF THE DOCUMENT.

13