UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6190-CR-DIMITROULEAS/Snow

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

RUDOLPH McKENZIE,

        Defendant.
_____/



## DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS OBTAINED AS A RESULT OF AN ILLEGAL SEARCH AND SEIZURE AND REQUEST FOR HEARING

The defendant, Rudolph McKenzie, through counsel, respectfully moves pursuant to Rule 12(b)(3), Fed. R. Crim. P., the Fourth Amendment of the United States Constitution, to suppress physical evidence and statements obtained as a result of the illegal search and seizure of the defendant, and in support thereof the defendant states:

### Procedural Background

On July 13, 2000, the government filed a two count indictment which alleges that on June 27, 2000, Mr. McKenzie: (1) attempted to import over 500 grams of cocaine in violation of 21 U.S.C. §§ 952(a) and 963 and 18 U.S.C. § 2; and (2) possessed over 500 grams of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

Mr. McKenzie's motion to suppress addresses the legality of the search and seizure which produced the cocaine and the defendant's statements.



## Factual Background

On July 27, 2000, at approximately 8:30 p.m., Mr. McKenzie arrived at the Fort Lauderdale-Hollywood International Airport on a flight from Jamaica. Mr. McKenzie cleared customs and exited the terminal area. Mr. McKenzie was met by his wife outside the terminal area and left the airport. However, McKenzie and his wife returned to the airport to look for Granville Williams, who was also on the flight from Jamaica. Mr. Williams had been detained by Customs after cocaine had been found in his luggage and according to the complaint affidavit, Mr. Williams informed Customs agents that he had been traveling with Mr. McKenzie.

While Mr. McKenzie was waiting for Mr. Williams outside the terminal area, two United States Customs agents approached him and asked if he was Rudolph McKenzie. When Mr. McKenzie replied in the affirmative, he was ordered to accompany the agents to the secondary Customs inspection area.

Once inside the secondary inspection area, the Customs agents seized Mr. McKenzie's drivers license and birth certificate. The Customs agents asked Mr. McKenzie the whereabouts of his luggage. Mr. McKenzie told the agents that his luggage was inside his car which was in the airport parking lot. At the request of the agents, Mr. McKenzie's wife took them to the automobile where they retrieved and searched Mr. McKenzie's luggage. Mr. McKenzie did not give the agents consent to search his luggage and the agents found no narcotics in Mr McKenzie's luggage. After the luggage search, the agents took Mr. McKenzie to a room and without his consent, conducted a pat-down search of his person. At this point, Mr. McKenzie had been in custody for approximately one and one-half hours.

After the luggage search and the pat-down search, the agents handcuffed Mr. McKenzie to a chair. Mr. McKenzie asked whether he was free to leave and the agents responded that Mr. McKenzie was not free to leave. The agents advised Mr. McKenzie of his Miranda rights and Mr. McKenzie signed a form stating that he understood his rights and was waiving his right to remain silent and his right to consult with an attorney. However, Mr. McKenzie denied that he was carrying any narcotics when questioned by the agents. Mr. McKenzie again asked whether he was free to leave and the agents asked Mr. McKenzie to consent to an X-Ray examination. Mr. McKenzie consented to an X-Ray examination. At this point, Mr. McKenzie had been in custody for approximately two and one-half hours.

The Customs agents transported Mr. McKenzie to Broward General Medical Center for the X-Ray examination. When Mr. McKenzie arrived at Broward Medical Center, he withdrew his consent for the X-Ray examinations when he was told he would have to undergo injections prior to the X-Ray. The Customs agents advised Mr. McKenzie that if he refused the X-Ray at Broward General Medical Center, he would be taken to Jackson Hospital where he would be forced to undergo the X-Ray examination. The custom agents further advised Mr. McKenzie that Jackson Hospital was a prison hospital and that he would not like the procedures employed there. Believing he had no other choice, Mr. McKenzie consented to the X-Ray examination at Broward General Medical Center.

The X-ray examination revealed the presence of foreign bodies in Mr. McKenzie's intestinal tract. Between June 28, and July 7, 2000, Mr. McKenzie expelled 96 latex pellets containing a white powdery substance alleged to be cocaine. Thereafter, Mr. McKenzie made statements to law enforcement officials describing how he had been recruited to import cocaine into the United States.

3

## DISCUSSION AND ARGUMENT

The cocaine must be suppressed because the Customs agents lacked reasonable suspicion when they initially detained Mr. McKenzie. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868 (1968). Although customs agents may conduct routine searches without any suspicion at the border or the functional equivalent of the border, the search in this case does not constitute a routine border search. See United States v. Hill, 939 F.2d 934 (11th Cir. 1994).

The Eleventh Circuit requires three elements to demonstrate that a search occurred at the functional equivalent of the border: (1) reasonable certainty that the border was crossed; (2) no opportunity for the object of the search to change materially since the crossing; and (3) the search must have occurred at the earliest practicable point after the border crossing. Hill, 939 F.2d at 937.

In this case the second and third elements are absent. Prior to the initial detention, Mr. McKenzie had left the airport and was not under constant surveillance by the Customs agents. Therefore, the second element is not present because there existed and opportunity for the object of the search to materially change after the border crossing. Compare United States v. Santiago, 837 F.2d 1545 (11th Cir. 1988) (Defendants under constant surveillance, leaving no opportunity for objects to have materially changed). Likewise, the third element is missing. The earliest opportunity to conduct the border search was when Mr. McKenzie cleared customs upon his arrival. Accordingly, the initial detention of Mr. McKenzie was not a border search and the Customs Agents were required to have reasonable suspicion.

The cocaine seized in this case must be suppressed because the Customs officers did not have a particularized and objective basis to suspect that Mr. McKenzie was carrying cocaine in his alimentary canal. See Unites States v. Montoya De Hernandez, 473 U.S. 531, 541, 105 S.Ct. 3304,

4

3311 (1985); United States v. Vega-Barvo, 729 F.2d 1341,1349 (11th Cir. 1984); Brent v. United States, 66 F.Supp. 2d 1287 (S.D. Fla. 1999). The detention of a traveler at the border, beyond the scope of a routine customs search and inspection, is justified at its *inception* if customs agents considering all the facts surrounding the traveler and his trip, reasonably suspect the traveler is smuggling contraband in his alimentary canal. Montoya De Hernandez, 473 U.S. at 541, 105 S.Ct at 3310. (emphasis supplied).

In this case, the Customs agents had no particularized reason to suspect Mr. McKenzie of carrying drugs inside his body when they initially detained him. Mr. McKenzie was detained solely because Mr. Williams told the Customs agents that he and McKenzie had been traveling companions. The fact that Mr. McKenzie was traveling with Mr. Williams without more is insufficient to justify the prolonged detention and request for an X-Ray examination. Reasonable suspicion must be specifically directed to the person to be searched and the Fourth Amendment does not permit any automatic or casual transference of suspicion. See United States v. Afanador, 567 2d 1325 ( 5th Cir. 1978) (Informant's tip that one stewardess would be body carrying cocaine did not provide reasonable suspicion for the body search of another stewardess arriving on the same flight).[1]

Because was Mr. McKenzie was being illegally detained when he consented to the X-Ray examination, the government cannot carry its burden that the consent was given freely and voluntarily. See Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319 (1983) (Mere submission to a claim of lawful authority insufficient to satisfy the burden that consent was given freely and voluntarily).

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 & 1209 (11th Cir. 1981) (on banc), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981)

5

Therefore, the government cannot justify the airport search on the basis of Mr. McKenzie's consent.

Finally, the statements Mr. McKenzie made after the X-Ray search was conducted must be suppressed as fruit of the poisonous tree because the statements were the direct product of Mr. McKenzie's illegal detention. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407 (1962).

WHEREFORE, based upon the foregoing facts and circumstances, the defendant, Rudolph McKenzie, requests the Court enter an order granting his Motion to Suppress and exclude from evidence in this case, 96 latex pellets containing suspect cocaine and the statements made to Customs agents after the X-Ray examination.

Respectfully submitted,

KATHLEEN M. WILLIAMS
FEDERAL PUBLIC DEFENDER

By: _____
Daryl E. Wilcox
Assistant Federal Public Defender
Florida Bar No. 838845
101 S.E. 3rd Avenue, Suite 202
Fort Lauderdale, Florida 33301
Tel: (954) 356-7436 ext. 112

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing instrument was mailed this /5th day of August, 2000 upon: Jeffrey Kay, Assistant United States Attorney, 299 E. Broward Blvd., Fort Lauderdale, Florida 33301.

_____
Daryl E. Wilcox

S:\WILCOX\McKenzie\suppress2

6