JHK:sr

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CC-6190
CASE NO. 99-6259-CR-DIMITROULEAS

UNITED STATES OF AMERICA,  :

          PLAINTIFF,  :

v.  :

RUDOLPH McKENZIE,  :

          DEFENDANT.  :

_____

### GOVERNMENT'S RESPONSE TO DEFENDANT' MOTION TO SUPPRESS AND MEMORANDUM OF LAW

The United States, by and through the undersigned Assistant United States Attorney, files this response to the defendant's Motion to Suppress Physical Evidence and Statements.

### BACKGROUND

On June 27, 2000, the defendant Rudolph McKenzie, arrived at the Fort Lauderdale International Airport as a passenger on Air Jamaica Flight #89 nonstop from Kingston, Jamaica to the United States. This flight arrived at the terminal at the airport handling international arrivals. As an international arriving passenger the defendant, McKenzie, was required to clear through the U.S. Customs facility at this terminal with his belongings and luggage. Flight Number 89 was a late arriving flight on the night of June 27, 2000 at the airport.

The defendant, McKenzie, upon his arrival, presented himself to a U.S. Customs

1



Inspector, along with a U.S. Customs Declaration at the primary inspection station.[1] The defendant was sent to the U.S. Department Agricultural Station at the facility to have his luggage x-rayed. The x-ray of his luggage determined no contraband in the luggage and the defendant McKenzie was allowed to leave the U.S. Customs enclosure area and was observed exiting the area out to the curbside area of the terminal. Defendant was advised of his rights at 10:40 p.m. while inside the U.S. Customs enclosure. See Exhibit 2. McKenzie, upon being questioned by the Customs Inspectors back inside the Custom facility, was hesitant and evasive with responses to specific questions. See Exhibit 3. Following McKenzie's departure from the U.S. Customs facility, Custom Inspectors determined that a subject Granville Williams, a minor, had been traveling with McKenzie from Jamaica and was a relative of McKenzie's.

The Customs Inspectors had determined that suspect Williams was carrying pellets filled with a white powder on his person and in his luggage. The white powder tested positive for the presence of cocaine. This detection of Williams took some time to accomplish by the Customs Inspector. At about this time, the Customs Inspectors learned from a lookout in the U.S.Customs Computer system that listed Granville Williams as a suspect traveling with McKenzie.

On the facts before them, the Customs Inspectors began to look for McKenzie as a fellow traveler of the subject Williams and based on the computer lookout. A Customs Inspector located McKenzie just outside the Customs enclosure area at the terminal. McKenzie was asked where his luggage was and he advised in his car and then McKenzie and Customs Inspectors began a search in the nearby parking garage for his vehicle. McKenzies' luggage was located and found to not contain any contraband.

---

[1] Exhibit 1 - U.S. Customs Declaration

2

McKenzie was provided with a consent for an x-ray of his abdominal area which he voluntarily signed and was taken to Broward General Hospital. See Exhibit 5. An x-ray revealed foreign objects in his digestive tract. McKenzie passed his first pellet at 0610 hours on June 28, 2000 and the contents were determined to be a white powder which tested positive for cocaine. While at Broward General, McKenzie passed 96 pellets from June 28-July 7, weighing 2.1 lbs. gross weight.

On July 7, 2000, McKenzie was taken from Broward General Hospital back to the U.S. Customs facility at Ft. Lauderdale Airport where he was advised of his constitutional rights, again, and interviewed by U.S. Customs Special Agents. See Exhibit 6. After being advised of his rights at this time McKenzie made incriminating statements about his recruitment and travel to Jamaica, his swallowing the pellets, and his co-traveler Williams. See Exhibit 7. On July 7, 2000, McKenzie was arrested by the Special Agents for violating Title 21, United States Code, Section 841(a)(1) and 952. On July 7, 2000, McKenzie appeared before U.S. Magistrate Judge Seltzer for his initial appearance on a federal complaint.

## MEMORANDUM OF LAW

The cocaine obtained from defendant McKenzie's alimentary canal was legally obtained by the U.S. Customs Service. The post arrest statements of the defendant McKenzie were legally obtained by the U.S. Customs Service. Both the cocaine and oral statements are admissible in Court against the defendant McKenzie.

For some time the international smugglers known as "swallowers" have been a problem to detect by the U.S. Customs Service on their arrival from foreign countries. The narcotics swallower walking off any foreign arrival flight shows no outward sign of being a drug smuggler

that could be detected by the eye of any customs inspector or canine dog sniffing for narcotics. The bulge in the pants, the funny walk, the limp of the normal narcotics courier cannot be seen in the actions of the swallowers.

In a case strikingly similar to this, United States v. Esiek, 940 F.2d 29 (2nd Cir. 1991), the Second Circuit Court of Appeals upheld the stop and detention of a swallower at John F. Kennedy Airport following his arrival from Nigeria. As the Second Circuit Court of Appeals pointed out, the Supreme Court in United States v. Montoya-Hernandez, 473 U.S. 531 (1985) considered the unique problems presented by the advent of the alimentary canal smuggler. The Supreme Court held,

> "... the detention of a traveler at the border, beyond the scope of a routine customs search and inspection is justified at its inception if customs agents, considering all the facts surrounding the traveler and trip, reasonably suspect that the traveler is smuggling contraband in her alimentary canal."

Thus, the test is reasonable suspicion.

An analysis of what the Customs Inspectors knew on the night of June 27, 2000 and when did they know it, provides a series of events which led to their reasonable suspicion of defendant McKenzie. See United States v. Golden, 532 F.2d 1244 (5th Cir. 1976) for a similar factual situation.

On the night of June 27, 2000, Air Jamaica flight #89 landed at Ft. Lauderdale International Airport on a nonstop flight from Kingston, Jamaica. This particular flight was known to U.S. Customs personnel as a flight that was being used by smugglers of narcotics into the United States and Flight 89 had in the past had several drug hits on passengers.

As the passengers departed, one Granville Williams, a minor, was stopped by Customs

Inspectors and while clearing customs at the customs facility a canine alerted to Williams person and luggage. A pat down search resulted in the discovery of ten pellets found in Williams' groin area filled with white powder. Inside a container in Williams luggage, the inspectors found 14 pellets.[2] The white power substance was field tested by the Customs Inspectors as positive for cocaine. This procedure took some time. By the time this action was completed, defendant McKenzie had already stopped at Customs with his luggage and was cleared to leave the customs area and exit the terminal to the street area in front of the terminal. The Customs Inspectors having now realized Williams had been traveling with McKenzie and Williams statement to them that McKenzie was his cousin began to look for McKenzie. A Customs Inspector found McKenzie outside the Customs are by the curb in front of the terminal. At this point in time the Customs Inspectors were suspicious of McKenzie. The Customs Inspectors suspected Williams of being a swallower based on their earlier findings and since Williams was a minor traveling with McKenzie, that McKenzie was also involved in some way. The Customs Inspectors also were now aware, according to their computer system, that McKenzie had been listed in the system as a possible suspect. Based on this reasonable suspicion, McKenzie was asked at the curb where his luggage was and he told the inspector in his car. Not described in the defendants so called factual background was a Laurel and Hardy exercise by McKenzie, wherein he could not locate his own vehicle in the parking garage across the roadway from the terminal for quite a while.

It is clear from the case law that the parking garage across from the terminal would be

---

[2] These pellets are described as latex condoms filled with cocaine powder and rolled into pellet sizes for swallowing purposes.

5

considered an area within the functional equivalent border area. The luggage was retrieved and searched and found to not contain any contraband. The next thing the Customs Inspector did was to give Exhibit 5, Standard Consent Form for an X-Ray" form to McKenzie.   McKenzie voluntarily signed the consent form for an x-ray and was taken to the nearest facility, Broward General Hospital. At Broward General Hospital, the x-ray of the defendants abdomen revealed foreign objects. McKenzie then over a period of days at Broward General Hospital passed the 96 pellets of cocaine from his body. On July 7, 2000, McKenzie was released from Broward General Hospital and interviewed by two Special Agents of the U.S. Customs Service. At the beginning of the interview, the U.S. Customs Special Agents read the defendant his rights and provided him with a Statement of Rights Form which he signed and waived his rights and answered the agents questions and made incriminating statements and signed a statement. See attached Exhibits 6 and 7.

The defendant's interpretation of U.S. v. Hill, 939 F.2d 934 (11th Cir. 1991) is not correct. If anything, the Hill case supports the actions of the U.S. Customs Service in this set of facts.

The search here in question is of the alimentary canal of the defendant McKenzie. For the purpose of suspicionless Customs searches, the border is elastic and certainly the body of McKenzie was still within the border area of the Ft. Lauderdale International Airport custom facility at this terminal. Places such as international airports within the country and ports within the country's territorial waters exemplify such functional equivalents. See United States v. Klein, 592 F.2d 909 (5th Cir. 1979) and United States v. Garcia, 672 F.2d 1349 (11th Cir. 1982).

As Hill teaches us, this circuit requires 3 elements to demonstrate that a search was conducted at a functional equivalent:

1. Reasonable certainty that the border was crossed - no issue here the body of this defendant crossed from a place outside of the United States (Jamaica) into a place in the United States at Ft. Lauderdale International Airport in the Southern District of Florida.

2. No opportunity for the object of the search to have charged materially since the crossing - having determined co-traveler had pellets in his possession and was traveling with this subject McKenzie, suspicion turned to McKenzie. As a suspected swallower of pellets the time elapsed from his leaving the customs enclosure the first time to the time he returned, he did not have enough time to change the contents of his alimentary tract or pellets since the crossing.

3. The search must have occurred at the earliest practicable point after the border crossing - upon his return to the Customs enclosure and all his evasive answers, the defendant signed a consent to x-ray his abdomen and was taken to nearby Broward General Hospital for an x-ray which confirmed internal objects. The search was conducted with the utmost expedient manner and in safety for the subject McKenzie.

The Eleventh Circuit has upheld suspicionless searches at international airports even though the passenger had left the Customs area. See United States v. Ogueri, 798 F.2d 452 (11th Cir. 1986); United States v. Santiago, 832 F.2d 1545 (11th Cir. 1988); United States v. Ramus, 645 F.2d 318 (5th Cir. 1981). What the Customs Inspectors and Agents did in this situation was reasonable and practicable at an international airport setting. The defense interestingly cites United States v. Montoya de Hernandez, 473 U.S. 531 (1985) where the Supreme Court reversed the Ninth

7

Circuit in favor of the Government on an alimentary canal smuggler. Justice Rehnquist held the detention of a traveler at the border, beyond the scope of a routine customs search and inspection is justified at its inception if customs agents, considering all the facts surrounding the traveler and trip, reasonably suspect the traveler is smuggling contraband in the alimentary canal; here the totality of the of the facts and circumstances known to the Customs officials clearly supported reasonable suspicion that this defendant was an alimentary canal smuggler. Even the defendants case United States v. Vega-Barvo, 729 F.2d 1341 (11th Cir. 1984) approves customs inspectors do not need a search warrant to perform an x-ray performed by a hospital facility based on reasonable suspicion and totality of the circumstances was valid as is the case here. Here, again, the facts in this case the inspectors had a particularized and objective basis for suspecting the particular person of alimentary canal smuggling.

The customs officers here had reasonable suspicion to suspect McKenzie as a traveling companion or chaperone of a minor person carrying pellets, which is common knowledge are to be swallowed and smuggled into the United States. At a minimum with Williams being a cousin and a minor it was reasonable to believe McKenzie was involved with Williams as a co-conspirator and facilitator. McKenzie's consent to be x-rayed was voluntarily given, as well as his oral and written statement.

8

WHEREFORE, the United States respectfully submits the 96 pellets expelled from the alimentary canal of defendant McKenzie and his oral and written statements are admissible in this case.

Respectfully submitted,

GUY A. LEWIS
ASSISTANT U.S. ATTORNEY

By: _____
JEFFREY H. KAY
ASSISTANT U.S. ATTORNEY
FLA BAR NO. 208035
500 E. Broward Blvd., 7th flr
Ft. Lauderdale, Fl 33394
(954) 356-7255
(954) 356-7336

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed on this _____ day of August, 2000, to Daryl Wilcox, Esq., Assistant Federal Public Defender, 101 N.E. 3rd Ave., Ft. Lauderdale, Fl 33394.

_____
JEFFREY H. KAY
ASSISTANT U.S. ATTORNEY

9

Dr LiG M 2527297740410

**NOTICE**
ALL PERSONS ARE SUBJECT TO FURTHER QUESTIONING AND THEIR PERSONS, BELONGINGS, AND CONVEYANCE ARE SUBJECT TO SEARCH. (19 CFR 162.3 - 162.6)

The unlawful importation of controlled substances (narcotics, chemicals, prescription medicines if not accompanied by a prescription, etc.) regardless of amount is a violation of U.S. law.

**AGRICULTURAL AND WILDLIFE PRODUCTS**

To prevent the entry of dangerous agricultural pests and prohibited wildlife, the following are restricted: Fruits, vegetables, plants, plant products, soil, meats, meat products, birds, snails, and other live animals or animal products, wildlife and wildlife products. Failure to declare all such items to a Customs/Agricultural/Wildlife officer can result in penalties and the items may be subject to seizure.

**CURRENCY AND MONETARY INSTRUMENTS**

The transportation of currency or monetary instruments, REGARDLESS OF AMOUNT, IS LEGAL; however, if you take out of or bring into the United States more than $10,000 (U.S. or foreign equivalent, or a combination of the two) in coin, currency, traveler's checks or bearer instruments such as money orders, personal or cashier's checks, stocks or bonds, you are required BY LAW to FILE a report on Form 4790 with the U.S. Customs Service. If you have someone else carry the currency or instruments for you, you must also file the report. FAILURE TO FILE THE REQUIRED REPORT OR FAILURE TO REPORT THE TOTAL AMOUNT YOU ARE CARRYING MAY LEAD TO THE SEIZURE OF ALL THE CURRENCY OR INSTRUMENTS, AND MAY SUBJECT YOU TO CIVIL PENALTIES AND/OR CRIMINAL PROSECUTION.

**MERCHANDISE** SS# 593 — 14 — 2998

VISITORS (NON-RESIDENTS) must declare in item 14 the total value of all articles intended for others and all items intended to be sold or left in the U.S. This includes all gifts and commercial items or samples. (EXCEPTION: Your own personal effects, such as clothing, personal jewelry and camera equipment, luggage, etc., need not be declared.)

U.S. RESIDENTS must declare in item 14 the total value of ALL articles, including commercial goods and samples, they acquired abroad (whether new or used, dutiable or not, and whether obtained by purchase, received as a gift, or otherwise), including those articles acquired in DUTY FREE STORES IN THE U.S. OR ABROAD, which are in their possession at the time of arrival. Articles which you acquired on this trip mailed from abroad, (other than articles acquired in insular possessions and various Caribbean Basin countries) are dutiable upon their arrival in the U.S.

THE AMOUNT OF DUTY TO BE PAID will be determined by a Customs officer. U.S. residents are normally entitled to a duty free exemption of $400 on those items accompanying them, non-residents are normally entitled to an exemption of $100. Duty is normally a flat rate of 10% on the first $1000 above the exemption. If the value of goods declared in item 14 EXCEEDS $1400 PER PERSON, then list ALL articles below and show price paid in U.S. dollars or, for gifts, fair retail value. Please describe the articles by their common names and material. For example: MAN'S WOOL KNIT SWEATER, DIAMOND AND GOLD RING, etc. Also, please have all your receipts ready to present to the Customs officer, if requested. This will help to facilitate the inspection process.

COMMERCIAL MERCHANDISE can be defined as articles for sale, for soliciting orders, or other goods not considered personal effects of the traveler.

POB - Queens NY

**IF YOU HAVE ANY QUESTIONS ABOUT WHAT MUST BE REPORTED OR DECLARED, ASK A CUSTOMS OFFICER**

| DESCRIPTION OF ARTICLES (List may be continued on another Form 6059B) | VALUE | CUSTOMS USE |
|---|---|---|
| FRI Family Reunion | | worldly Father Body Shop |
| 561-597 5826# | | $205 |
| 561-879 1984 | | |
| TOTAL ▷ | | |

Paperwork Reduction Act Notice...

Customs Form 6059B (012799)(Back)

---

APHIS/FWS USE ONLY  SS# 593 14 2998  CUSTOMS USE ONLY

**WELCOME TO THE UNITED STATES**

DEPARTMENT OF THE TREASURY
UNITED STATES CUSTOMS SERVICE

FORM APPROVED
OMB NO. 1515-0041

**CUSTOMS DECLARATION**

19 CFR 122.27, 148.12, 148.13, 148.110, 148.111

Each arriving traveler or responsible family member must provide the following information (only ONE written declaration per family is required):

1. Family Name: Mchanzic
2. First (Given) Name: Rudolph
3. Middle Initial: I
4. Birth Date (day/mo/yr): FEB 1, 1971 21 1 17?
5. Airline/Flight No. or Vessel Name or Vehicle License No.: JH0089
6. Number of Family Members Traveling With You:
7. (a) Country of Citizenship: U.S.  (b) Country of Residence: U.S.
8. (a) U.S. Address (Street Number/Hotel/Mailing Address in U.S.): 7585 Anaheim Ln. Anaheim L?
   (b) U.S. Address (City): Palm Bay / Palm City  (c) U.S. Address (State): FL  34990
9. Countries visited on this trip prior to U.S. arrival:
   a. Jamaica  b.  c. Came W/ Wtt Williams
10. The purpose of my (our) trip is or was: (Check one or both boxes, if applicable) GRAD  _X_ Personal
11. I am (We are) bringing fruits, plants, meats, food, soil, birds, snails, other live animals, wildlife products, farm products; or, have been on a farm or ranch outside the U.S.: ☐ Yes ☒ No
12. I am (We are) carrying currency or monetary instruments over $10,000 U.S., or foreign equivalent: ☐ Yes ☒ No
13. I have (We have) commercial merchandise, U.S. or foreign: (Check one box only) ☐ Yes ☒ No
14. The total value of all goods, including commercial merchandise I/we purchased or acquired abroad and am/are bringing to the U.S. is: $ (U.S. Dollars)

(See the instructions on the back of this form under "MERCHANDISE" and use the space provided below to list all the items you must declare. If you have nothing to declare, write "-0-" in the space provided above.)

**SIGN BELOW AFTER YOU READ NOTICE ON REVERSE**
I have read the notice on the reverse and have made a truthful declaration.

X [signature]   U.S. IMMIGRATION
Signature                    Date (day/mo/yr)
U.S. Customs use only — Do not write below this line — U.S. Customs use only

| INSPECTOR'S BADGE NUMBER | STAMP AREA |
|---|---|
| I.P. 37252 | JUN 27 2000 ADMITTED UNTIL |

TIME COMPLETED: 23:40

Customs Form 6059B (012799)


GOVERNMENT EXHIBIT

*ATTACHMENT "C"*

## MIRANDA WARNINGS

- Before we ask you any questions, it is my duty to advise you of your rights.

*[initialed]* You have the right to remain silent.

*[initialed]* Anything you say can be used against you in court, or other proceedings.

*[initialed]* You have the right to consult an attorney before making any statements or answering any questions, and you may have him present with you during questioning.

*[initialed]* You may have an attorney appointed by the U. S. Magistrate or the court to represent you if you cannot afford or otherwise obtain one.

*[initialed]* If you decide to answer questions now, with or without a lawyer, you still have the right to stop the questioning for the purpose of consulting a lawyer.

**However**

*[initialed]* You may waive the right to advice of counsel and your right to remain silent and answer questions or make a statement without consulting a lawyer if you so desire.

*[initialed]* Do you understand your rights?    Yes ✓    No_____

*[initialed]* Do you waive your rights?    Yes ✓    No_____

Signed: _[signature]_

Date: 6/27/00    Time: 22:40

Witness: Carol Fludder

Badge: 41600

Witness: _[signature]_ 37252 _[signature]_

Badge: 37252

22

**GOVERNMENT EXHIBIT (2)**

# Appendix D

### Personal Search Worksheet

Date of search: 06 27 2000   TECS Report Number: 2000 SA 000 88 0801
Search start time: 21:50   Stop time: 21:53

⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄

PERSON SEARCHED:
Last name: Rudolph Issac McKenzie   First name: Rudolph   MI: Issac
DOB: 02 01 1974
POB: City: _____   State: _____   Country: _____
Address: 758 SW Anaheim Lane
Street: Palm City, FL 34990
City: _____   State: _____   ZIP Code: _____
Country: _____
Race: B   Sex: M   Ht: 5'8"   Wt: 190   Hair: Black   Eyes: Black   Citizenship: US

⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄

Conveyance type: Commercial   Out: In
Airline/cruise line: Air Jamaica   Flight/voyage number: #089
Departure airport: Kingston   Embarkation airport: Kingston
Vehicle: _____   License year: _____   State: _____   Number: _____

⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄

Search type: Patdown   If partial body: Degree of search: N/A   Results: Negative (P/N)
Funds on person: $ 205.00

⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄ ⋄

Searching officer: Castrenze   Witness: Brett
Authorizing supervisor(s): Gladden
Reasons for search: Behavioral / Inconsistencies / Intel
Supervisor's check sheet completed: NA   On-call attorney consulted: Y
Port director notified: Yes   Time: _____

### Use reverse side for narrative

This Worksheet should be used to record information on the search, for later transcription into TECS. When the search results in a seizure and/or arrest, the Worksheet becomes part of the seizure documentation. When no enforcement action results, the

GOVERNMENT EXHIBIT ③

FP&F Case # _____
Violator _____
Citizenship _____
S/N/S _____
Date _____ SS# _____
DOB _____ Sex M Race black

| EVENT | PERSON | TIME - DATE |
|---|---|---|
| Referring Primary Inspector | Link /C | - 6/27/00 |
| Declaration Taken By | Castrenze/J | - 6/27/00 |
| Discovering Officer | Montes/C | 0610 - 6/28/00 |
| Seizing Officer (Secondary officer/initiating X-ray) | Castrenze/J | 0610 - 6/28/00 |
| K-9 Officer Receiving Alert | N/A | - |
| Supervisor Notified Of Seizure | Gladden/C | - |
| Supervisor Notified By | Monte | - |
| Minor (Yes___) (No___) | ************ | ************ |
| Accompanying/Waiting Adult | NA | |
| Adult Involvement (e.g. Witness/Transport, etc.) | NA | |
| SCI Approval For Patdown Sought | By: Brett/Gladden | 2150 - 6/27/00 |
| Approving Supervisor | Gladden/C | 2150 - 6/27/00 |
| Searching Officer | Castrenze/J | 2153 - 6/27/00 |
| Witness | Brett/K | 2153 - 6/27/00 |
| SCI Approval For Partial Body Search Sought | By: NA | - |
| Searching Officer | NA | - |
| Witness | NA | ************ |
| Personal Search Worksheet Completed | Yes ✓ No ___ | ************ |
| IO25 Completed (Yes___) (No ✓) (on form pcb) | | |
| Port Director Contacted For Medical Exam | Norma Cyr | 2200 - 6/27/00 |
| Chief Counsel Consulted | | - 6/27/00 |
| Medical Exam Approved By Port Director | Yes ✓ No ___ | 2205 - 6/27/00 |
| 2 Hour Notification Given To: (if desired & no P.C.) | N/A | - |
| Phone Number Of Person Notified | ( ) | ************ |
| Transported To Hospital - (Inspectors) | Hope Woman | 2330 - 6/27/00 |
| Arrived At Hospital | ************ | - |
| Passenger Signed Consent For Treatment | ************ | - |
| X-Ray Requested | ************ | 0050 - 6/28/00 |
| X-Ray Completed | ************ | 0112 - 6/28/00 |
| Body Cavity Search Conducted | ************ | NA |
| S/A Notifying O.F.O. of A.U.S.A. Decision | NA (per X-ray <8hrs) | - |
| A.U.S.A. Decision: ___ (No R.S.)_(R.S.)_(P.C.) | NA | - |
| Inspector Notified Of A.U.S.A. Decision | NA | - |
| Supervisor Notified Of A.U.S.A. decision | NA | - |
| Port Director Notified X-Ray Positive/Inconclusive | CRV | 0130 - 6/28/00 |
| Port Director Re-approval Of Detention (< 8hrs) | NA (PC <8hrs) | - |
| Field Tested Positive For: cocaine | By: Montes/C | 0610 - 6/28/00 |
| Witness | Castrenze/J | ************ |
| Weight: 2.150  Pounds | By: Castrenze | 10:50 - 7/7/00 |
| Witness | Montes | ************ |
| Sector Officer Notified | Hambrick | 11:03 - 7/7/00 |
| Notified By | Montes | ************ |
| OI Agent Notified of P.C. | | - |
| Notified By | | ************ |
| Began Transport From Hospital (Inspectors) | Gladden Castrenza | 10:40 - 7/7/00 |
| Arrived At Airport | ************ | 10:52 - 7/7/00 |
| INS Officer Notified | NA-(USC) | - |
| INS Notified By | NA | - |
| Agent/Detective Responding To Seizure | Outlaw | 10:55 - 7/7/00 |
| Passenger Released To: | Outlaw | 11:30 - 7/7/00 |
| Mirandized By | Castrenze/J-CI | 2240 - 6/27/00 |
| Witness | Gladden/C - SCI | ************ |
| Arrested By | Castrenza | 11:00 - 7/7/00 |
| INS Detainer Received By (S/A or Detective) | NA | - |
| Narcotics CF 6051# | To: | - |
| Baggage CF 6051# | To: | - |
| Other CF 6051# | To: | - |
| PAU Target: Yes ✓ No ___ (1 DAY) | TECS Pos: Yes ( No ) | ************ |

Completed from seizure narrative / stool status sheet



GOVERNMENT EXHIBIT (4)

*ATTACHMENT "A"*

## Standard Consent Form for an X-Ray

I, the undersigned, hereby consent to an x-ray examination of the trunk of my body by a medical facility designated by the United States Customs Service. I consent to the result of said examination and related medical records being given to officials of the United States Customs Service. I hereby release the facility and its personnel performing said examinations and any officials of the United States Customs Service directing that said examinations be carried out, from any liability arising out of the performance of said examinations. I understand that I have the right to refuse such consent and acknowledge that my consent is freely given and is not the result of any threats, coercion or other intimidation.

Signed: _[signature]_

Print Name: Rudolph N Shenzie

Date: 6/27/00

Time: _____

Witness Signature: _____

Badge: _____

Witness Signature: _[signature]_ 4C.

Badge: 4018

**GOVERNMENT EXHIBIT**

## STATEMENT OF RIGHTS

Before we ask you any questions, it is my duty to advise you of your rights.

You have the right to remain silent.

Anything you say can be used against you in court, or other proceedings.

You have the right to consult an attorney before making any statement or answering any question, and you may have him present with you during questioning.

You may have an attorney appointed by the U.S. Commissioner or the court to represent you if you cannot afford or otherwise obtain one.

If you decide to answer questions now with or without an attorney, you still have the right to stop the questioning at any time, or to stop the questioning for the purpose of consulting an attorney.

HOWEVER--------

You may waive the right to advice of counsel and your right to remain silent and answer questions or make a statement without consulting an attorney if you so desire.

--------------------------------------------------------------

## WAIVER

I have had the above statement of my rights read and explained to me and fully understand these rights. I waive them freely and voluntarily, without threat or intimidation and without any promise of reward or immunity, I was taken into custody at _11:00 AM_ (time), on _7/7/00_ (date), and have signed this document at _11:45 AM_ (time), on _7/7/00_ (date).

(Signature)

WITNESSES:
_____
(Name)
_____
(Name)

GOVERNMENT EXHIBIT
6

593 142 998
7/7/00

United States of America _____ ) ss
Southern, District of Florida )

, state that:

1. I, Rudolph McKenzie
2. I reside at 958 Anaheim Ln. Palm City FL, was
3. approached by an individual named S.P.
4. at a get together he told me he trafficked
5. internally he told me that a man by the
6. name of Yat in Jamaica would pay for
7. My ticket & also pay me to carry some
8. pellets at first I said no, but I was
9. in debt to some people whom I needed to
10. pay & I was buried in bills with no money
11. & a broken down car with a wife & 2 children
12. to support so I decided 1 trip would
13. help clear me instead of borrowing more
14. money that was a very wrong decision
15. after laying in the hospital for 10 days
16. & having spoken with the officers I realized
17. that I need to keep a positive influence
18. around me, I wish I knew people like them
19. before this. They really educated me on
20. the dangers & how to be part myself.
21. I'm sorry & will never do this again &
22. with Gods help I can educate & help
23. others which would be more gratifying.
24. Thank you for your time. God Bless
25.
26.                                    Rudolph L. McKenzie Jr.
27.                                    593142998  7/7/00

Form 2311 (Rev. 9-76)            GOVERNMENT
                                  EXHIBIT
                                    (7)                Department of the Treasury

| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |

I have read the foregoing statement consisting of _____ pages, each of which I have signed. I fully understand this statement and it is true, accurate and complete to the best of my knowledge and belief. I made the corrections shown and placed my initials opposite each.

I made this statement freely and voluntarily without any threats or rewards, or promises of reward having been made to me in return for it.

Subscribed and sworn to before me this 7th
day of 9/15 ~~19~~2000,
at 1390 H25 (1:30 PM

_____ (Signature of affiant)
393142998
7/7/00

B. C. Floyd SSA/USCS
(Signature)

(Title)                                    (Signature of witness, if any)

Department of the Treasury                ☆U.S. G.P.O. 1981-732-094        Form 2311 (Rev. 9-76)

